MALLON et al. v. WILLIAM C. GREGG & CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1905.)

No. 2,115.

1. PATENTS FOR INVENTIONS—APPLICATION OF OLD DEVICE TO NEW USE NOT INVENTION.

The application of an old machine or combination to a new use is not in itself invention or the subject of a patent.

It is only when the new use is so recondite, or so remote from that to which the old device has been applied or for which it was conceived, that its application to the new use would not occur to the trained mind of the ordinary mechanic skilled in the art seeking to devise means to perform the desired function with the old machine or combination before him, that its conception rises to the dignity of invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 31, 32.]

**2. SAME—APPLICATION OF ENDLESS CHAIN TO NEW USE OF RAKING SUGAR-CANE NOT INVENTION.**

The conception of the application of an endless-chain rake which had been constructed and used to move ice, coal, hay, grain, lumber, and crushed sugar-cane to the new use of raking sugar-cane from a loaded car before it is crushed is not an exercise of inventive genius.

**3. SAME—MECHANICAL EQUIVALENT—SIGNIFICATION PROPORTIONED TO CHARACTER OF INVENTION.**

The term "mechanical equivalent" has a broad and generous signification in the interpretation of a pioneer patent, a very narrow and restricted meaning in the construction of a patent for a slight improvement, and, in the interpretation of patents for the great mass of inventions which fall between these extremes, its meaning is proportioned to the advance which the invention under consideration evidences.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 24.]

**4. SAME—INFRINGEMENT OF COMBINATION.**

The absence from a device that is alleged to infringe a patented combination of a single mechanical element of that combination is fatal to the claim of infringement.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 376, 387.]

**5. SAME—GRADUAL ADVANCE IN ART—EACH INVENTOR ENTITLED TO HIS OWN IMPROVEMENT.**

When the advance in an art is gradual, and many inventors form different combinations or make different improvements which materially aid to accomplish desired results, each is entitled to his own combination or improvement, so long as it differs from those of his competitors and does not include theirs.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 10.]

**6. LETTERS PATENT No. 583,408 VALID, BUT NOT INFRINGED BY MACHINE DESCRIBED IN LETTERS PATENT No. 670,176.**

Letters patent No. 583,408, to James Mallon, for an automatic mechanism for unloading and feeding sugar-cane, are not invalid for want of invention or of novelty in the combination which they portray.

But they are not infringed by the machine described in letters patent No. 670,176, to William C. Gregg, for a cane-unloading machine, because a mechanical element of Mallon's combination is absent from the latter's machine.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Minnesota.

For opinion below, see 126 Fed. 377.

This is a suit for the infringement of letters patent No. 583,408, issued May 25, 1897, to the complainant, James Mallon, assignor of one-half to James W. Bodley, upon an application filed February 20, 1897. The machine of the defendants which is alleged to infringe is described in letters patent No. 670,176, issued to William C. Gregg on March 19, 1901, upon an application filed December 18, 1900. The defenses are lack of novelty in the combination of the complainants, and no infringement of their monopoly by the use of the device of the defendants. The court below sustained the defenses and dismissed the bill.

George W. Rea (James L. Norris and James L. Norris, Jr., on the brief), for appellants.

A. C. Paul, for appellees.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The machines to be considered in this case were devised for the purpose of unloading sugar-cane from cars. The patents which describe them are for combinations of old and well-known mechanical elements.

In the process of manufacturing sugar, the cane is brought upon open box cars along to the side of a continuously moving conveyor, which carries and feeds it to the mill where it is crushed. When a car is to be unloaded, the side of it toward the conveyor, which is hinged at the lower edge, is turned down until its upper edge rests upon the floor or upon the top of the stationary wall by the side of the conveyor, so that it forms an inclined plane or chute down which the cane may be drawn from the car onto the conveyor. When the cut cane arrives in the car it varies in length from three feet to seven feet, and, while an attempt has been made to place it lengthwise of the car, some of it is crooked, and it forms an irregular, promiscuous, and confused mass. The stalks of the cane are heavy and slippery, so that a man can handle but a small quantity of it at a time, and that with much difficulty. As the conveyor feeds the cane to the mill to be crushed, it is essential that it be so placed upon the conveyor that a uniform and proper amount of it shall be constantly borne forward to the rollers, and it may not be dumped upon the conveyor by the car load or in large and irregular lots. Prior to the introduction of the complainants' machines to accomplish this purpose, this result was attained by the use of manual labor. Men with long-handled hooks were stationed on the side of the conveyor opposite to that upon which the car stood, and they pulled the stalks of cane out of the car down upon the conveyor with their hooks. The services of from 7 men to 15 men were required to unload the cane with sufficient celerity to properly feed a mill which used 800 tons per day, and the work of these men is now performed by the machines under consideration with a single attendant. From this brief statement of the method of handling and feeding sugar-cane to the mills it will be seen that the problem to be solved at the time when Mallon made his invention was to produce a machine which would draw the cane from the car with constant and yet controllable speed, so that a uniform and suitable amount of it would be continuously carried forward and fed to the mill by the conveyor. The nature of this problem will be fully understood only after a portrayal of the prior art. But the advances the machines of the respective parties evidenced may be most clearly disclosed by first presenting the solutions of this problem which they offer, and by then comparing them with the state of the art before they were presented.

Counsel for the appellants write in their brief that "it must be borne in mind that the complainants' patent does not claim in and of itself an endless-chain rake provided with teeth. That element is recognized and admitted to be old and well-known prior to the invention of complainants' patent." Bearing this admission, which

is sustained by the record, in mind, let us consider the means by which the respective parties to this suit reached the result which they desired.

Mallon put rakes on two endless chains, placed these chains on a frame long enough to reach from a driving shaft on the opposite side of the conveyor from the loaded car to the farther side of the car, pivoted this frame on the driving shaft, and, having raised its free end above, lowered it upon the load and raked it onto the conveyor.

Gregg put an endless chain supplied with teeth around a triangular frame, suspended this frame above the load, then gradually lowered it upon it, and, by actuating the chain, raked the cane onto the conveyor.

Mallon sleeved one end of his frame loosely on his driving shaft, so that the other end might be raised or lowered. To the free end he attached a bail and a rope or chain which ran over a drum above the rake-section, by means of which and its connection with proper mechanism the operator could raise or lower that end of the frame at will. He keyed a pair of sprocket-wheels to the shaft to propel the endless chains. On each side of these wheels a box suitable to hold the end of a tubular stretcher-rod was loosely sleeved upon the shaft by means of an eye. The end of a stretcher-rod was placed in each of these boxes, and there secured by clips and nuts. On the outer or free ends of these rods a short fixed shaft which bore two idler sprocket-wheels was secured. Two endless chains were stretched over the sprocket-wheels upon this shaft and over those upon the driving shaft, and were propelled by the latter. The ends of the tubular stretcher-rods in the pivotal boxes were adjustable therein. The under side of each box was open, so that a flanged bushing provided with internal screw threads could be introduced into the stretcher-rod, and so that a screw plug which had a bearing against a shoulder of the box might engage the threads of the internal screw. By loosening the clips and turning the screw plugs which bore against the shoulders of the pivotal boxes the rods could be forced outward and the chains made taut, and when this was done the rods could be secured in their places by again tightening the clips. On the under side of the stretcher-rods cross-bars were fastened upon which three boards, one at each side of the rake-section and one between and equidistant from these side boards, were secured, so that the under faces of the side boards furnished bearings for the endless chains as they slid over them. The center board was provided with a longitudinal groove in which projections or tongues upon the cross-bars which form the heads of the rakes ran to guard the rakes against lateral movement. Cross-bars provided with rake-teeth to engage the sugar-cane, and with tongues upon their backs to follow the groove in the center board, were fastened to and carried by the two endless chains. A single rake-section has now been described. The patent portrays several placed side by side and driven by the same shaft.

The operation of Mallon's machine is simple. When out of use the free end of the rake-section is secured above the track upon which the loaded cars come to the mill so that they may pass beneath it. When a loaded car has been placed upon the track and its side has been turned down preparatory to unloading, the endless chains which carry the rakes are driven by the sprocket-wheels upon the shaft. There is a brake and a lever upon the drum by means of which the operator may lower the free end of the rake-section as rapidly as he chooses until the rakes reach the bottom of the car. He depresses the free end of the section, and, as it descends, the rakes engage the cane and pull it over onto the conveyor until the car is unloaded, when, by the use of the drum and the actuating machinery with which the operator may connect it, the rakes and the frame which carries them are again raised out of the way of the cars. The claims of the patent of the complainants which are alleged to be infringed read in this way:

"(1) In automatic mechanism for unloading and feeding sugar-cane from cars, an endless rake, or rake-section, pivotally supported at one end and adapted to be lowered into position to engage the cane in a car and to be hoisted away from the emptied car, the said rake, or rake-section, comprising stretcher-rods, shafts at the ends of said rods, sprocket-wheels on said shafts, endless chains connecting said sprocket-wheels, and cross-bars provided with rake-teeth and carried by said chains, in combination with driving mechanism for said endless chains, and means for hoisting and lowering the said rake or rake-section, substantially as described."

"(4) The combination of a rotary shaft having sprocket-wheels keyed thereon, boxes pivotally supported on said shaft, stretcher-rods having a longitudinally-adjustable connection with said pivotal boxes, a fixed shaft carried at the outer or free ends of the stretcher-rods, sprocket-wheels on said shaft, endless chains connecting the sprocket-wheels of the fixed shaft with the sprocket-wheels on the rotary shaft, cross-bars carried by said chains and provided with rake-teeth, and mechanism for hoisting and lowering the stretcher-rods and connected rake devices, substantially as described."

Gregg hung a driving shaft far enough above the tracks of the railroad and the conveyor to enable him to suspend a triangular frame above the loaded cars. He keyed a sprocket-wheel upon this shaft, and suspended a triangular frame at one of its angles by means of a fork whose arms embraced the sprocket-wheel and were sleeved upon the shaft by means of holes in their ends. At each of the other angles of the frame he mounted an idler sprocket-wheel, and he stretched an endless-chain rake, which consisted of an endless chain to which teeth were directly attached, over the three sprocket-wheels around the outside of the frame. To the end of one of the three bars which composed the frame which was farthest from the driving shaft a cable or chain was attached, which extended over sheaves above, and was attached to a counterweight. To this counterweight another chain or cable passed over pulleys and then over a winding drum, whereby the operator by turning the drum might elevate or depress the angle of the triangle to which the hoisting cable was attached. This device was provided to tighten the chain. One of the idler sprocket-wheels was mounted between the arms of a fork, the shank of which was fastened to an

extension of one of the bars of the triangle by two bolts which passed through holes in this extension and through a longitudinal slot in the shank of the fork and were secured in place by nuts. A boss was cast on the shank, and a perforated internally-threaded boss on the extension of the bar. A screw which bore against the boss on the shank of the fork was inserted in the threaded boss. The frame was expanded and the chain-rake tightened by loosening the nuts of the two bolts and turning up the screw. When the chain had been made taut, it was secured in place by again tightening the nuts upon the bolts. The three bars which formed the sides of the triangle were attached to connecting pieces to which their ends were bolted, so that they could be readily removed, and so that longer or shorter bars could be substituted, to the end that a car might be unloaded at a longer or shorter distance below the driving shaft. The plan of operation contemplated that several of these machines should be suspended from and propelled by the same driving shaft, and, as two of them would unload a car more conveniently and speedily than one, they were generally operated in pairs. When not in use, the counterweight raised or swung the angle of the triangle to which the hoisting cable was attached up into a plane near that of the driving shaft, so that the entire triangle was above the loaded cars. When a car had been properly placed to be unloaded, the rake was driven by the sprocket-wheel on the shaft, the operator turned the drum, raised the counterweight, and in this way lowered the angle of the triangle to which the cable was fastened, as he chose. As this angle descended, the chain-rake engaged and drew the stalks of cane from the car upon the conveyor until they were all removed. The machine was so placed that when the chain-rake completed its work of unloading it was running along the lower side of the triangular frame in a horizontal plane parallel to that of the bottom of the car. When the unloading was completed, the operator unwound the cable upon the drum, and the counterweight again lifted the machine out of the way of the cars.

The description of the rival machines which has been given discloses the fact that the means devised by Mallon and Gregg to apply the endless-chain rake to the unloading of sugar-cane from box cars were not identical, and the concession that the rake itself was old and well known relieves from any review of the state of the art for the purpose of disclosing the prior use of the endless chain. It is only necessary to consider the means which had been devised before Mallon's invention to apply this rake to analogous uses. It is also obvious that in the study of these means it is not very material whether the endless chains carried teeth, shovels, buckets, slats, or other devices to collect or move the materials which were the subjects of its action, because the problems of applying the endless chain carrying such devices to remove grain, coal, ice, lumber, hay, straw, and sugar-cane are either identical or analogous. We turn to the consideration of the prior state of the art.

In 1866, Parlour, in letters patent No. 54,822, described the construction and operation of an endless chain which carried buckets

by means of which grain in the hold of a vessel or other depository might be drawn into an elevator. This chain belt was pivoted at the elevator, its outer end was raised and lowered by means of upright screw-shafts or permitted to descend by its own weight, so that the chain and the buckets might rest at the will of the operator upon and engage the grain while they were in operation.

Giffhorn, in 1872, procured letters patent No. 123,391 for an elevator of ice, which consisted of an endless double chain mounted upon an inclined frame. The chain bore braced projections which engaged blocks of ice upon the ground at its lower end and pushed them up an inclined chute to the icehouse.

Morey, in 1874, portrayed in letters patent No. 152,760 a machine for taking hay, straw, grain, and similar substances from a stack or wagon and conveying them to a threshing or cutting machine. This mechanism was mounted upon a wagon bed or sled, and consisted, among other things, of an endless belt stretched around a four-sided frame. This frame was pivoted and provided with rollers at its corners, so that it was both extensible and adjustable. Around the rollers and beyond the outside of the frame a belt which carried hooked teeth was stretched, and it was driven by a shaft or drum and a belt. In operation these rake-teeth on the belt engaged the hay, straw, or grain, and took them away to the conveyor.

Letters patent No. 305,784, issued September 30, 1884, to Peter Best, show an adjustable elevator leg pivoted at one end, free to rise and fall at the other, to which a rope or cable is attached, which passes over one pulley and is secured to another, so that the operator may raise and lower the free end of the leg at will by the use of this rope and pulley. Wheels are mounted at each end of the leg, and over these wheels an endless belt, which carries shovels, is placed. The lower end of the leg is not only pivoted, but it is adjustable, so that it may be moved about from place to place. The work of the device is to break down bodies of coal with its shovels, so that the pieces of coal may be taken up by the buckets of an upright elevator at the lower end of the leg and carried out of the vessel or other depository. The endless belt and its shovels are operated by a chain which engages the wheels at the lower end of the leg and which is actuated by the driving shaft of the upright elevator.

In letters patent No. 295,185, issued to Lockhart on March 18, 1884, there is a description of an endless toothed chain belt operating on a pivoted frame to regulate the feeding of grain to a threshing machine. The belt passes around two pulleys or drums. One of these drums propels the toothed belt, and is itself driven by a pulley and belt upon its shaft. The other is supported by a like frame from the axle of the former, so that the frame has a movement about that axle as a center. A bail with a rope upon it is attached to the free end of this frame, so that the operator may raise, or lower it as he desires. This rope enables him to cause the toothed belt to rest upon the grain and to rake it forward to the threshing machine.

There is a description of a conveyor of crushed cane designed for use in canemills in letters patent No. 481,837, issued August 30, 1892, to Wilson, that is instructive. It pictures an endless sprocket chain which carries knives and is stretched over two sprocket-wheels, one of which is mounted on a driving shaft, while the other is secured upon a shaft between the ends of the longitudinally-adjustable arms which are loosely bolted to and extend from the standards which support the driving shaft. The chain is mounted in an inclined plane, and a long box is shown beneath it in a similar plane to receive the crushed cane from the mill and to discharge it through a chute at its upper end. As the crushed cane is fed into the lower end of the box, the knives of the endless chain, which is propelled by the driving shaft, engage the cane, and rake or draw it up the box until they discharge it into the chute at its upper end. During operation the endless chain and its knives rest upon the crushed cane, and, as the arms between which its lower sprocket-wheel is mounted are loosely secured or pivoted to the standard, its lower end is free to rise and fall in conformity to the quantity of material which is fed beneath it. Each of the arms, or, to use the designation of Mallon, of the stretcher-rods, which assists to carry the idler sprocket-wheel, is divided, and its ends are again connected by screws which reciprocally engage, so that each arm may be lengthened or shortened to tighten or loosen the chain at will by turning these screws.

Letters patent No. 412,621, issued October 8, 1889, to Lyman D. Howard, portray means for applying an endless-chain rake to the movement of coal which are strikingly similar to those employed by Mallon to rake the sugar-cane. Howard's machine was a gatherer to facilitate the unloading of coal, grain, and like materials from the holds of vessels, and its work was to rake or draw the materials to or into the lifting buckets upon a vertical elevator which scooped them up and carried them away. He used a frame loosely journaled at one end upon his driving shaft, so that the other end could be raised and lowered without interfering with the operation of the gatherer. To the free end of the frame he attached a rope or chain by which that end of the machine could be elevated or depressed at will. He keyed a sprocket-wheel to propel his endless chain upon his driving shaft, which was located near the foot of the elevator and was actuated by the power which drove the elevator. He journaled one end of a long arm loosely upon his driving shaft on each side of his sprocket-wheel. He loosely mounted upon a shaft between the outer ends of these arms an idler sprocket-wheel. Over the two sprocket-wheels he placed an endless sprocket chain which carried flights or gatherers. When this machine was not in operation its outer end was raised by means of the rope attached to it until the frame and belts stood in a nearly vertical position by the side of the upright elevator. When the operator desired to use the gatherer, he lowered its free end by means of the rope until the chain and its gatherers came in contact with the coal or grain to be moved, propelled the chain by means of the sprocket-wheel upon

the driving shaft, and the material was raked or drawn toward the foot of the elevator.

An endless chain provided with plates and adapted to move grain is shown upon a frame pivoted at one end in letters patent No. 258,-287, issued to Martin Maher, May 23, 1882, and the adaptation of an endless chain which carries slats to the use of removing lumber from a crib or pile to a conveyor is disclosed in a patent numbered 256,511, issued to Stillwell on April 18, 1882. There are other letters patent in the record; but those to which we have now referred sufficiently illustrate the state of the art when Mallon made his invention for the purposes of this case. They demonstrate the fact that the endless-sprocket chain provided with rake-teeth, buckets, slats, and projections of various kinds, the frame to carry it pivoted at one end upon a driving shaft and furnished with a bail, a rope or a chain attached to its free end by means of which it could be raised or lowered at will, the sprocket-wheel keyed to the driving shaft to drive the endless chain, longitudinally-adjustable arms pivoted upon the driving shaft at one end on each side of the sprocket-wheel, and holding an idler wheel mounted upon a shaft between their outer ends, and various combinations of these mechanical elements to adapt the endless rake to the removal of hay, grain, straw, ice, coal, lumber, and crushed cane, were old and well known before Mallon conceived his invention. What, then, was the novelty of his conception which proves that it was the product, not of mechanical skill, but of inventive genius? Counsel for appellants answer that it was the burst of thought that this endless-chain rake might be used to unload sugar-cane from cars, and the mechanical adaptation of the old devices in which it had served to this new use. Was there, however, an exercise of inventive genius in the conception that an endless-chain rake which had been applied to the movement of the materials which have been specified could also be used to rake sugar-cane from a loaded car? The thought that a machine or combination which is discovered in a remote art, where it is used to perform another function, a machine or combination which was not designed by its maker, was never actually used, and was not apparently suitable, to accomplish the desideratum, may be adapted to perform the requisite function, may be, and frequently is, with proper mechanical adaptation, the result of the exercise of the inventive faculty. But a thought which would naturally occur to any mechanic familiar with the object to be attained, and with an existing machine or combination discovered in the same art or in one nearly analogous to it, designed, suitable, and used to perform a similar function, that this machine or combination can be used or adapted to perform the function desired, is not the product of inventive genius, but the mere result of the application of the skill of the mechanic to the subject under consideration.

The application of an old device to a new use is not in itself an invention or capable of protection by a patent. A prior patentee who has plainly described and claimed his machine or combination has the right to every use to which his device can be applied, and to

every way in which it can be utilized to perform its function, whether he was aware of all these uses or methods of use when he claimed and secured his monopoly, or not. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 709, 45 C. C. A. 544, 560; Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121; Goshen Sweeper Co. v. Bissell Carpet-Sweeper Co., 72 Fed. 67, 19 C. C. A. 13; Frederick R. Stearns & Co. v. Russell, 85 Fed. 218, 226, 29 C. C. A. 121, 129; Manufacturing Co. v. Neal (C. C.) 90 Fed. 725; Tire Co. v. Lozier, 90 Fed. 732, 744, 33 C. C. A. 255, 268.

It is only when the new use is so recondite and remote from that to which the old device has been applied, or for which it was conceived, that its application to the new use would not occur to the mind of the ordinary mechanic, skilled in the art, seeking to devise means to perform the desired function, with the old machine or combination present before him, that its conception rises to the dignity of invention. "If the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may, at least, involve an exercise of the inventive faculty." Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 390, 21 Sup. Ct. 409, 45 L. Ed. 586; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 447, 23 C. C. A. 223, 237; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 702, 45 C. C. A. 544, 553.

The application by Mallon of the endless-chain rake and pivoted frame of Howard to the unloading of sugar-cane instead of coal may be conceded to have been a new use and to have produced a new result. He was the first to successfully unload sugar-cane with the endless-chain rake. But Howard's device and the other machines described in the various patents to which we have adverted were not found in a remote or unrelated, but in a near and analogous, if not in the same, art. The problems of applying these machines to unload or move hay, straw, coal, grain, and crushed sugar-cane on the one hand and uncrushed sugar-cane upon the other were practically the same. In moving all these materials the various machines act upon the same principle and perform similar functions. The application of them to the unloading of sugar-cane involved the discovery of no new principle either of construction or of operation. A mechanic skilled in the art seeking to construct a machine to unload sugar-cane from a car with the endless chains, gatherers, and pivoted frames of Howard and Best suitable to unload coal, with the endless toothed chain and pivoted frame of Lockhart designed to feed grain to a threshing machine, with the endless chain, the knives upon it, and the longitudinally-adjustable arms of Wilson constructed to rake the crushed cane, with the toothed endless chain and pivoted rectangular frame of Morey designed to take hay from a wagon or stack and to convey it to a threshing machine

or cutter, and with the shafts, sprocket-wheels, and gearing for operating these machines which their descriptions disclose, before him, could hardly fail to think that a device already adapted to move these articles might well be used to rake cane from a loaded car. Such a thought does not rise to the dignity of a creative conception. It is but the natural suggestion of the mind of the ordinary mechanic, and it may not take the machine which embodies it out of the category of the products of mechanical skill. The new use was so near, so analogous, to the old uses to which the devices shown in the prior art had been put, that its conception was not invention.

The result is that, if there is any novelty which may sustain the alleged invention and patent of Mallon, it is not in the conception of the application of the endless-chain rake and its pivoted frame to the new use of unloading cane from cars, but in the specific combination of mechanical elements by means of which he adapted the old devices to serve the new use. And in this realm his field of invention was not broad. If he applied any of the prior devices or any of their mechanical equivalents without combining them with other elements to the new use, he conceived no invention, and his patent cannot be sustained, because the prior patentees held a monopoly of these devices and of all their mechanical equivalents. If the patent to Mallon protects an invention, therefore, it is only because the combination he describes falls without the limits of the mechanical equivalents of the prior devices. Those machines were so many, so efficient, and so clearly portrayed, that the monopoly which secures Mallon's invention is necessarily limited by them to the specific construction described in his patent and its mechanical equivalents, in a very narrow sense of that term, because, if its signification is broadened and applied to the patent of Mallon, that patent is anticipated and rendered void by the necessary application of the same signification of the term to the prior machines and combinations. The term "mechanical equivalent" has a broad and generous signification in the interpretation of a pioneer patent, a very narrow and restricted one in the construction of a patent for a slight improvement, and, in the interpretation of patents for the great mass of inventions between these extremes, its meaning is always proportioned to the character of the advance or invention under consideration. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 711, 45 C. C. A. 544, 561.

The patent in the case at bar protects the discovery of no new principle. It does not secure the invention of the first machine or combination which performed the function of raking or unloading materials by means of an endless-chain rake. It protects nothing more than a novel combination of old mechanical elements by means of which the endless rake may be used to perform its customary function. In what, then, does the novelty of the invention claimed by Mallon consist? A comparison of his first claim with the prior patents and machines discloses the fact that the combination of "cross-bars provided with rake-teeth and carried" by the

two endless chains with the other elements mentioned in that claim is not disclosed in the prior art. And a similar comparison of the fourth claim with the prior machines shows that the combination of "boxes pivotally supported on said shaft, stretcher-rods having a longitudinally-adjustable connection with said pivotal boxes," and "cross-bars carried by said chains and provided with rake-teeth," with the other elements of that claim, was apparently novel. But the machines of the defendants have neither cross-bars provided with rake-teeth upon its endless chain, nor stretcher-rods longitudinally adjustable in pivotal boxes. Since at least one element of each of the combinations secured by the claims upon which this suit is founded is wanting in the machines of the defendants, they cannot be held to infringe these claims, and the decree of dismissal is not subject to reversal. The absence from a device that is alleged to infringe a patented combination of a single mechanical element of that combination is fatal to the claim of infringement. Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 451, 23 C. C. A. 223, 242; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 718, 45 C. C. A. 544, 569.

The contention that the toothed-sprocket chain of Gregg is the mechanical equivalent of the toothed cross-bars of Mallon attached to his chains, and that Gregg's fork adjustable to the extension of one of the bars of his triangular frame is the equivalent of the stretcher-rods of Mallon longitudinally adjustable in his pivotal boxes, has not been overlooked. And if Mallon had been a pioneer in the art under consideration, if he had first invented a machine or combination by which the functions of raking materials of the nature of those which have been described had been performed by an endless chain, the suggestion might well prevail. But, as we have seen, he was not an inventor of this character. And if the toothed chain of Gregg is the equivalent of the toothed cross-bar of Mallon fastened upon two endless chains, by the same mark the toothed endless belt of Morey, the gatherer bearing belts of Best and Howard, the knife-carrying chain of Wilson, and the slat-bearing chain of Stillwell, are mechanical equivalents of the endless chains and toothed cross-bars of Mallon. If the fork of Gregg longitudinally adjustable on the extension of one of the bars of his triangle is the mechanical equivalent of the stretcher-rods of Mallon adjustable in his pivotal boxes, by the same interpretation the longitudinally adjustable arms of Wilson are the equivalents of Mallon's stretcher-rods and boxes, and Mallon's alleged invention is anticipated and his patent is avoided by the devices disclosed and patented before he devised his combination. The state of the art when he conceived his invention made the way he was compelled to travel to sustain it narrow, if it did not make it straight, and it is only by keeping sedulously within its limits that he may preserve it. The moment he crosses its boundaries he trespasses on prior rights which superseded his own. The case is one in which the art was not developed in a single leap by one great genius, but in which many men have contributed both the genius of inventors and the skill of mechanics

to its progress, and the advance in it has been gradually made, step by step. It falls within the rule that where the advance towards the desideratum is gradual, and several inventors form different combinations and make different improvements which materially aid to accomplish desired results, each is entitled to his own combination or improvement, so long as it differs from those of his competitors and does not include theirs. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 712, 45 C. C. A. 544, 563; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Stirrat v. Manufacturing Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 438; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231.

The advance in the art which the machine of Mallon evidenced, while it disclosed no new principle, presented a novel combination whereby old devices might be adapted to a new, but a near and analogous use. It was a perceptible and commendable advance, and to him the character of inventor ought not to be denied. But the combination of the defendants differs from and does not include his, and their machines fail to infringe his patent.

The decree below is accordingly affirmed.