HARVEY HUBBELL, Inc., v. AMERICAN BRASS & COPPER CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1924.)

No. 144.

1. Patents ⬙236—If a patent is on form only, a different form avoids infringement.

If a patent is of or on substance, the form, however varied by the alleged infringer, is of no importance, but if the patent be on form only, then a different form avoids infringement.

2. Patents ⬙165—Patentee bound by language of claims if clear.

If the language of the claims of a patent is clear and distinct, the patentee is bound by it, though it fails to disclose fully his invention.

3. Patents ⬙328—Tregoning, 918,102, for incandescent lamp socket, claims 7 and 8 held not infringed.

The Tregoning patent, No. 918,102, for socket for incandescent lamps, held one of form only, and claims 7 and 8 not infringed by a device on which they do not literally read.

4. Patents ⬙168(3)—Scope of claims limited by rejection of claims.

A patentee cannot assert a scope for amended claims that might have been urged for the original claims, which were rejected for want of invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Harvey Hubbell, Inc., against the American Brass & Copper Company. Decree for complainant, and defendant appeals. Reversed.

Suit is on Tregoning patent, 918,102, covering a "socket for incandescent lamps"; claims 7 and 8 being relied on. They are as follows:

"(7) A socket for incandescent lamps comprising separable disks of insulating material, and a switch embodied therewith and provided with a flexible connection to operate said switch, an eyelet member rigidly secured to said disks between the same and with which said flexible connection is adapted to have running engagement, and an inclosing shell for said disks separable therefrom and from said eyelet member.

---

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"(8) A socket for incandescent lamps, comprising upper and lower insulating disks spaced apart from one another, and a switch between said parts having a flexible connection to operate the same, an eye member rigidly secured to the insulating disks spaced apart from one another, and a switch between said parts having a flexible connection to operate the same, an eye member rigidly secured to the insulating disks between said parts through which said flexible connection extends, and a slotted shell adapted to sleeve over the socket parts and through which said eye member is adapted to project."

Although the specification shows quite an elaborate organization for an entire socket, plaintiff has sued on the quoted claims, because what is here in issue is only the method of affixing the chain (i. e., the "flexible connection") which, when pulled, makes or breaks the lighting circuit.

The inventive concept is to avoid putting the aperture or channel through which the chain leads (i. e., the "eyelet member") on the shell or sleeve; a well-known method necessitating the threading of the chain through the shell, and consequent likelihood of fouling when for any purpose the shell is temporarily removed.

This patentee takes, as the basis or foundation of his entire socket, two discs (i. e., "separable discs of insulating material," or "upper and lower insulating discs spaced apart from one another"), which are held apart permanently by metal, thus affording a body or container space within which he builds his switch mechanism, and to which the same is attached. The chain operating the mechanism must lead to the outer air, and he puts it through a tube (i. e., the "eyelet member") which is "rigidly secured to said discs between the same," so that the mechanism, chain tube and all, is complete before the shell is slipped on. The shell is then "slotted," in such wise that the projecting tube does not prevent a sufficiently tight and complete fit. The mechanical objective of this apparatus, is not only to shift the shell on and off without bothering over the chain and its lead or channel, but to put the strains of chain pulling on the firmly articulated body inside the shell. That body with chain attached operates mechanically when the shell is removed, exactly as it does with the shell on.

The defendant's device has no foundation or skeleton of two discs rigidly fastened together, on which the necessary mechanism is built or to which it is fastened. It has a single porcelain casting, which by its own strength carries all interior working parts, but it does not carry the tube or "eyelet member" through which the chain leads. This tube is normally loose, but when the socket is assembled and the shell slipped on, the tube by means of metal strips with which it is connected is firmly supported by the shell. Whatever strains arise from chain pulling (not in a straight line) are borne by the shell, and not by the interior body as in the patented device.

So far as ease of shell removal, without annoyance from the chain, is concerned, defendant's device attains the same result as does that of the patent. The court below held that such result was reached in substantially the same way, and decreed infringement. Defendant appealed.

Livingston Gifford, of New York City, and Charles W. Owen, of Toledo, Ohio, for appellant.

Clifton V. Edwards and Lawrence K. Sager, both of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Although the patent is for a socket for electrical lamps, the claims in suit relate solely to the mechanics of providing for the circuit, its making and breaking. Let it be assumed that the device is clever, and has attained a reasonable measure of commercial success—the questions remain as always—what did the patentee really add to the sum of human knowl-

edge, and how did he define in his claims the addition which he disclosed in his specification.

Tregoning came into a crowded art; the field of invention for mechanical arrangement of circuit carrying or regulating parts, seems very limited; but it may also be admitted on this record that he was the first to take the trumpet ended tube which has long carried the chain of a prior art, off the shell or sleeve and affix it to the skeleton or framework within, and this, though a minor feat, was meritorious.

But this device was but a part of what he patented, and covered by claims not in suit, and to measure what a patentee does, and properly judge how he does it, the whole disclosure must be regarded. Tregoning says he would make a socket having "definitely related and uniform contact surfaces, which do not change or diminish in area" by alternately making and breaking the circuit; i. e., he announces a better mechanism, which requires a strong framework for its support and permanent corelation. He especially points out that his "contact members"—through which the circuit is made and broken—are "peculiar and original in this, that they are stationary as to their position on the socket, and permanently fixed on the opposed insulating discs," and these are the discs specifically mentioned in both the claims in suit.

This shows that it was of the essence of patentee's concept to have upper and lower discs, each capable of bearing a contact piece firmly fixed to it, which pieces required all the rigidity of which the mechanism was capable. Obviously it also became necessary as rigidly to connect the discs with each other.

It seems therefore plain that the use of two discs each capable of mechanical (not merely electrical) functioning, and so connected as to make a firm foundation for other parts, was an integral and necessary part of the patentee's inventive thought; and the presence in the claims of a pair of discs so related that the "eyelet member" can be "rigidly secured," in result, to both discs, is an essential part of that idea.

Confessedly, defendant's eyelet member is not rigidly secured to anything; it is (so to speak) clamped against the socket body by the closely fitting shell. As plainly, defendant has no two discs capable of holding or "rigidly securing" anything. The entire mechanism of defendant's socket is borne by one porcelain piece, dished out to receive the switch parts. That single piece carries all the mechanical strains, which Tregoning divides between his upper and lower discs. Defendant has a lower disc, which, however, performs no mechanical function; it is electrically indispensable as an insulator, but the parts of defendant's device operate with mechanical perfection with that disc removed, and electrically they would do just as well if the disc were of flexible paper.

It is not always easy to harmonize with each other, in the light of given case facts, several legal formulæ, each of which singly considered, is axiomatic. The doctrine of equivalents must be adjusted to the maxim that there can be no infringement by reaching the same result, which qua result is always unpatentable; and the same doctrine must not impugn the rule that infringement is always of a claim, and what is not claimed cannot be protected; even though the specification re-

296 F.—4

veals its presence in the inventor's mind. It is only by doing the same thing in substantially the same way, that infringement results, and equivalence is confined to the limits of "substantially."

[1] This is the real teaching of Curtis, J., in his classic judgment in Winans v. Denmead, 15 How. 338, 14 L. Ed. 717; one must look through form to substance, and, if the patent is of or on substance, the form, however varied by the alleged infringer, is of no importance, but, if the patent be on form only, then a different form avoids infringement.

But whether a patent is on form or substance, is a question which opens inquiry into the art, and its history—to ascertain whether anything more than form was left in the inventive field. This thought is carried forward in Taft, C. J.'s, opinion, in Eibel, etc., Co. v. Minnesota, 261 U. S. 45, 43 Sup. Ct. 322, 67 L. Ed. 523.

[2] But if the patentee is "unfortunate in the language he has chosen" for his claims, and that unfortunate language is "clear and distinct, the patentee is bound by it." McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Evans v. Hall Co., 223 Fed. 539, 541, 139 C. C. A. 129.

[3] Applying these considerations, we are of opinion:

(1) That the patent was one of form only—it consisted in changing the relation of a tube to a shell, to the same relation between the tube and a socket framework; consequently depriving the same tube of all fixation and clamping it (so to speak) between shell and framework is not doing the same thing in the same way. If Tregoning had been the first to think out a tube as a lead for the chain, the result would have differed.

Further (2) the claim language is so clear and distinct, and so plainly drawn to correspond with the patentee's whole thought, that plaintiff must be bound by it, and it is admitted all round that neither claim will literally "read on" defendant's device.

[4] Finally we may (3) summarily note, that the file wrapper and contents show that the claims in suit were evolved from two earlier claims, which in terms demanded protection for a "socket * * * having a switch embodied therewith and provided with a flexible connection," and also for an eyelet member "mounted on the main body of said socket," or "rigidly secured to the main socket body parts." The earlier claims were rejected as showing "no invention," and were thereupon changed to their present form. It seems to us that plaintiff is here asserting for the existing claims a scope which he could, we think, certainly have urged for the originals. This, under rules too familiar to need citation, he cannot do.

Decree reversed, with costs, and direction given to dismiss the bill for noninfringement, with costs.