## R. H. BUHRKE CO. v. BRAUER BROS. MFG. CO.

Circuit Court of Appeals, Eighth Circuit.
June 12, 1929.

No. 8158.

J. Bernhard Thiess, of Chicago, Ill. (Robert Lewis Ames, of Chicago, Ill., and Delos G. Haynes, of St. Louis, Mo., on the brief), for appellant.

John H. Bruninga, of St. Louis, Mo. (John H. Cassidy, of St. Louis, Mo., on the brief), for appellee.

Before STONE and LEWIS, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge. The R. H. Buhrke Company, plaintiff below and appellant here, is a golf bag manufacturer of Chicago, Ill. The defendant below and appellee here is the Brauer Brothers Manufacturing Company, a manufacturer of golf bags of St. Louis, Mo. The plaintiff has been engaged in the manufacture of golf bags since 1913, the defendant since 1909. The Buhrke Company is the owner of two United States patents, No. 1,229,326, issued June 12, 1917, and No. 1,461,459 issued July 10, 1923. Both were originally issued to John E. Schank, and are known as the Schank patents. The defendant is the owner of the Brauer golf bag patent, No. 1,118,649, issued November 24, 1914, to A. J. Brauer.

The plaintiff brings this suit alleging that the defendant has infringed and is infringing both of its patents by manufacturing and selling a golf bag which embodies the Schank inventions. It particularly alleges an infringement of claims 3, 4, and 5 of patent No 1,229,326, and claims 5, 7, 8, and 9 of patent No. 1,161,459, and prays the usual relief by injunction and for damages.

The defendant denies the infringement, and as a further defense says the Schank patents are invalid. The defendant admits the manufacture and sale of the golf bag complained of, but says that it does not infringe the patents of plaintiff.

The real controversy arises over what is a proper construction of the claims of plaintiff as found in its patents.

Patent No. 1,229,326 is directed to an improvement in the construction of the bottom of a golf bag, while patent No. 1,461,459 is directed to new constructions in both bottom and top, so far as their claims are pertinent to this inquiry.

The trial court found that there was no infringement and dismissed the complaint.

The claims alleged to be infringed in No. 1,229,326 are 3, 4, and 5, as follows:

"3. In a golf-bag bottom, the combination with the body material, of a sheet-metal bottom composed of a disk having annular corrugations therein and a downwardly turned flange, and an upwardly turned flange connected thereto of lesser width pressed against the inclosed body material to clamp it between the two flanges, for the purpose described."

"4. In a golf-bag bottom, the combination with the canvas body material a, of the outer reinforcing strip b sewed thereto at its upper edge, the inner reinforcing strip c interposed between the canvas a and the leather b, a sheet-metal bottom cap d having the flanges g and j for the purpose described, and the cushion k secured on the top of the bottom cap."

"5. As a new and useful article of manufacture, a reinforcing cap for golf-bag bottoms, consisting of a metallic disk having a downwardly extending annular flange, and an upwardly extending annular flange, of less width joined thereto and adapted to have its upper edge turned inward, substantially as and for the purpose described."

These claims provide for a metal golf bag bottom composed of a disk having a downwardly turned flange and an upwardly turned flange connected thereto of lesser width, with the body material extending down to the bottom of the groove between the two flanges and fastened by the outer upturned flange crimping it against the inner one. This method of fastening the bottom to the body is the novelty of the patent as shown by its record in the patent office.

The defendant's golf bag admittedly has a metal aluminum bottom, composed of one piece. This metal bottom is a disk, having a downwardly turned flange, and an upwardly turned flange connected therewith of lesser width. The outer or upwardly turned flange is turned inwardly in such a way as to make a ring. The body of the bag which comes down to this ring is fastened to the inner or downwardly turned flange by rivets, and not by crimping the outer or upwardly turned flange against the body as in the Schank patent. This same construction is carried by defendant into the top of its bag.

The plaintiff contends that its claims are broad enough to protect against the use of a bottom such as is found in the defendant's bag, while the defendant insists that these claims should be limited, by the state of the art and by amendments made in the patent office to the single improvement of crimping or fastening the body of the bag by pressing the outer flange against the inner one. It thus becomes necessary to determine definitely what novelty or patentable improvement is found in plaintiff's patent, conceding it to be valid.

It is not a pioneer. Gamble, North British Rubber Company, Keblinger, and many others had largely occupied the field, those named using metal bottoms.

█ The rule in such cases is well settled that the patentee is entitled to his own improvement and no more. Moon-Hopkins Billing M. Co. v. Dalton A. M. Co. (C. C. A.) 236 F. 936, citations 938, and Mallon v. Gregg (C. C. A.) 137 F. 68, 79. What was said in Mallon v. Gregg, supra, is directly in point here. The court said: "The state of the art when he conceived his invention made the way he was compelled to travel to sustain it narrow, if it did not make it straight, and it is only by keeping sedulously within its limits that he may preserve it. The moment he crosses its boundaries he trespasses on prior rights which superseded his own. The case is one in which the art was not developed in a single leap by one great genius, but in which many men have contributed both the genius of inventors and the skill of mechanics to its progress, and the advance in it has been gradually made, step by step. It falls within the rule that where the advance towards the desideratum is gradual, and several inventors form different combinations and make different improvements which materially aid to accomplish desired results, each is entitled to his own combination or improvement, so long as it differs from those of his competitors and does not include theirs."

█ The history of this patent as it passed through the patent office is important. It was granted only after much discussion leading to its amendment. The claims as originally made were rejected as being covered by prior patents, particularly by Gamble. The correspondence between the examiner and counsel for the patentee all lead to the conclusion that the novelty which caused the patent to be granted was the crimping idea. The claims were amended specifically to include this, before they were allowed. This being true the claims must be strictly construed against the inventor.

This rule is clearly expressed in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, quoting from page 443, 47 S. Ct. 136, 141 (71 L. Ed. 335), where the court said: "It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U. S. 593, 597 [6 S. Ct. 493, 29 L. Ed. 723]. If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. Shepard v. Carrigan, supra [116 U. S.] 597 [6 S. Ct. 493]; Hubbell v. United States, 179 U. S. 77, 83 [21 S. Ct. 24, 45 L. Ed. 95]. Whether the examiner was right or wrong in rejecting the original claim, the court is not to inquire. Hubbell v. United States, supra [179 U. S.] 83 [21 S. Ct. 24]. The applicant having limited his claim by amendment and

accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. Sargent v. Hall Safe & Lock Company, 114 U. S. 63, 86 [5 S. Ct. 1021, 29 L. Ed. 67]; Shepard v. Carrigan, supra [116 U. S.] 598 [6 S. Ct. 493]; Hubbell v. United States, supra [179 U. S.] 85 [21 S. Ct. 24]. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 529 [14 S. Ct. 627, 38 L. Ed. 500]. So where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he 'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments which amount to a disclaimer.' Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677 [41 S. Ct. 600, 65 L. Ed. 1162]."

The attention of the examiner was repeatedly called to the advantages of fastening the body to the bottom by crimping the outer flange, and only when he became convinced of such advantages did he allow the claim here involved. From these record facts it is difficult to reach any other conclusion than that the novelty or patentable improvement in the minds of both the examiner and patentee at the time the patent was allowed was the fastening of the body of the bag to the bottom, by turning over the outer flange and crimping the body of the bag to the inner flange.

In view of the prior art and the radical changes made in the patent office in the claims restricting them, we are of the opinion that defendant's bag does not infringe patent No. 1,229,326.

Claims 5, 7, 8, and 9 of patent No. 1,461,459 are alleged to be infringed by defendant's bag. These claims are as follows:

"5. In a golf bag, the combination with a flexible body, of an annular bendable stiffening strip secured around the outside of the open top of the body, a rigid metallic annulus inside of the top of the body and having an exposed outwardly extending flange overhanging the stiffening strip, and rivets for securing the body, strip and annulus together."

"7. In a golf bag, the combination with a flexible body, of an annular bendable stiffening strip secured around the outside of the top of the body, a rigid metallic annulus inside of the top of the body and having an exposed outwardly extending flange overhanging the stiffening strip, rivets for securing the body, strip and annulus together, stiffening rods provided with eyes at their upper ends, covering strips secured at their edges to the body and holding the rods in place, and other rivets extending through the rods in place, and other rivets extending through the strips, eyes and body."

"8. In a golf bag the combination with a flexible body, of an annular bendable stiffening strip surrounding the bottom of the body, metallic stiffening rods having eyes at their lower ends, cover strips for the rods secured at their edges to the outside of the body, a cup-shaped metallic bottom piece associated with the lower end of the body, the stiffening strip and cover strips and stiffening rods, and rivets extending through the flange of the bottom piece, eyes, stiffening strip and body to secure them together."

"9. In a golf bag, the combination with a flexible body of bendable annular stiffening strips, secured around the outside of the top and of the bottom of the body, a plurality of metalic stiffening rods having eyes at their top and bottom interposed between the body and the stiffening strips, cover strips for the rods secured at their edges to the outside of the top, a rigid metallic annulus inside of the top of the body and having an exposed outwardly extending flange overhanging the stiffening strip, a cup-shaped metallic bottom piece associated with the lower end of the body, the stiffening strip, the stiffening rods and their cover strips, and rivets for securing the aforesaid parts together, substantially as and for the purpose aforesaid."

These claims relate to improvements in both the top and bottom of golf bags. What is the novelty in this second patent? If there is any, which we doubt, it pertains to the form and use of the exposed outwardly extending flange, overhanging the stiffening strip at the top of the bag. This flange is not so shaped as to form a ring as in defendant's bag. The outer flange of the bottom claimed in the first patent is simply transferred to the top of the bag. The

metal top and bottom were not new, neither was the use of rivets in fastening the parts together, nor were the metal stiffening· rods new. These had all been claimed or anticipated by the prior patents referred to by the examiner, when he first rejected the claims here under consideration. The claims must be limited to the single new idea, if there is any, of the overhanging flange at the top of the bag. It must be regarded as a patent for form, and unless the accused device appropriates the actual form of plaintiff there is no infringement.

The principle of law limiting the extent of such a patent is clearly stated in Harvey Hubbell, Inc., v. American Brass & Copper Co. (C..C. A.) 296 F. 47, 50, where the court said: "This is the real teaching of Curtis, J., in his classic judgment in Winans v. Denmead, 15 How. 338, 14 L. Ed. 717; one must look through form to substance, and, if the patent is of or on substance, the form, however varied by the alleged infringer, is of no importance, but, if the patent be on form only, then a different form avoids infringement. But whether a patent is on form or substance, is a question which opens inquiry into the art, and its history—to ascertain whether anything more than form was left in the inventive field."

There are no hard and fast rules of law that should govern in this case. Plaintiff's invention must be construed along with the work of other inventors, and then it should be given only such improvement as Schank actually made himself. It should not be given the benefit of earlier workers in the same field. Judged by this rule Schank made but slight improvement and plaintiff is entitled to but little protection.

Plaintiff attaches much importance to the commercial success of its bags. This element should be considered, but in this case the metal bottom idea was not new. It was old. The public, however, did not quickly accept it. Its advantages had to be demonstrated. The public had to be educated to its benefits, and pulled away from the traditional Scotch custom of leather bags. The ability to sell must not be mistaken for inventive genius. The one is quite distinct from the other. The power to exploit and commercially handle a patent does not always accompany inventive ability.

In view of the limitations which must be placed upon plaintiff's patent, we do not think that defendant's bag constitutes an infringement.

The decree of the court below will be affirmed.