## ENGLER v. GENERAL ELECTRIC CO.

District Court, S. D. New York.

March 5, 1943.

Ring & Murray, of New York City (Carl E. Ring, of New York City, of counsel) for plaintiff.

Alexander C. Neave, of New York City (Prowell S. Mack, of Schenectady, N. Y., and Robert B. Whittredge, of New York City, of counsel), for defendant.

CONGER, District Judge.

Action for patent infringement. Plaintiff is the owner of patent No. 1,492,972. The patent states that it is for new and useful improvements in dynamo-electrical machinery. The patent was granted to plaintiff on May 6, 1924. This action was commenced in 1939.

Plaintiff claims that a motor now in use in Logan, West Virginia, and referred to as the thyratron motor made and sold in 1935 by the defendant General Electric Company infringes his patent. This motor will be hereinafter designated as the Logan Motor.

A pretrial order herein provided that the infringement shall be limited to the said electric motor and its thyratron control equipment.

Claims 1 to 8 inclusive are the only claims of the Engler patent which are alleged to have been infringed.

Originally there were two other causes of action in the complaint. These were disposed of by me during the trial. Plaintiff made claim for interference between his patent No. 1,492,972 and two Alexanderson patents (owned by defendant) Nos. 1,993,581 and reissue patent 20,364. The Engler patent had expired before the commencement of the trial. I, therefore, decided that this was no longer a live issue between the plaintiff and defendant and dismissed it.

Plaintiff made another claim which sounded in either fraud or unfair competition on the part of defendants. I dismissed this count or claim on the merits. This was done with the consent of the plaintiff.

The two issues to be decided in this case are: (a) the validity of the Engler patent No. 1,492,972, (b) infringement thereof by the defendant by the Logan Motor.

During the trial there was frequent reference to the Alexanderson patents (No. 1,993,581 and reissue No. 20,364) now owned by defendant. Defendant's attorney admitted that the Logan Motor was made in accordance with the Alexanderson patents. Plaintiff attempted to show that these patents were invalid but I ruled against that because defendant's attorney stated that he made no claim of presumption of non-infringement by reason of the fact that the Logan Motor had been constructed under the two said patents.

While the plaintiff's contention is that 1-8 of the claims of the patent have been infringed, claim 8 was picked out as a typical claim. Most of the testimony and the argument has been directed to claim 8. A determination on this claim will apply to the other claims.

Claim 8 reads as follows (I have, for the purpose of comparison, subdivided and numbered its various elements):

1. In an electric motor,
2. the combination with,
3. a plurality of power windings,
4. and a plurality of magnetic members,
5. of reversible polarity,
6. relatively rotatable,
7. and in mutually inductive relation,
8. of current supply for causing motion of said members relatively to said windings to produce useful work thereby,
9. means for reversing the polarity in a synchronous cycle,
10. and means for rendering ineffective the electromotive force induced by said reversals.

Reading the claim upon the Logan Motor we find certain elements in common. The expert witness for the defendant testified on this point as follows:

"Q. We agree to this extent, that the Logan motor is an electric motor, it has a plurality of power windings; it has at least one magnetic member; it has a field winding; that this field winding and the power windings are rotatable and in mutually inductive relation to each other; and there is a current supply so that you get motion or useful work? A. That is right."

This leaves in dispute elements numbered 5, 9 and 10 and perhaps element number 4, although this does not seem to be important. The Logan Motor has only one magnetic member which is the rotating field.

The elements numbered 5, 9 and 10, as I read the testimony, are essential in the device described in the Engler invention. Specifically they are not found in the Logan Motor.

784

The pretrial order heretofore made and entered in this case (paragraph 7) holds that these elements, 5, 9 and 10, are not employed in the Logan Motor.

When we consider the elements common to the Logan Motor and the Engler device, one cannot spell out infringement. These elements are common to every machine of a similar nature and were old in the art long before Engler's device was conceived.

Plaintiff, however, does not claim infringement upon this theory.

Plaintiff contends that all of the elements or their equivalents of claim 8 of the Engler patent are contained in the Logan Motor; that the Logan Motor accomplishes substantially the same thing in substantially the same way as the device contemplated by the Engler patent.

Plaintiff does not contend that any of the elements of his proposed device are new or novel. In fact he admits the contrary. What he does say, is that he has taken a number of elements old in the art and assembled them together in a novel combination which plaintiff claims is novel, amounting to invention. Plaintiff further contends that defendant through the Logan Motor not only reaches the same result as Engler but does it by a combination of elements, each individual element of which is either the same or equivalent.

This brings up for examination and application the doctrine of equivalents. That is the real problem here in passing on infringement.

In Harvey Hubbell, Inc., v. American Brass & Copper Co., 2 Cir., 296 F. 47, 49, Judge Hough, writing for the court, has the following to say of this subject: "The doctrine of equivalents must be adjusted to the maxim that there can be no infringement by reaching the same result, which qua result is always unpatentable; and the same doctrine must not impugn the rule that infringement is always of a claim, and what is not claimed cannot be protected; even though the specification reveals its presence in the inventor's mind. It is only by doing the same thing in substantially the same way, that infringement results, and equivalence is confined to the limits of 'substantially'".

It seems to me that the above is the yardstick of law by which I should measure this controversy between these parties in so far as the issue is one of equivalence.

With that in mind, we will now examine those elements in the Logan Motor which plaintiff claims are the equivalent of elements in the Engler device.

It would serve no useful purpose to enter into a detailed description of plaintiff's patent. For the purpose of clarity, however, a brief description is necessary. I shall refer to figure 1 as shown in the patent.

This shows four similar units mounted on a common shaft. Each unit is complete in itself. For the purpose of description I take figure A. This shows an iron ring (1) around which are wound two coils. This is the armature or stator. Inside this ring is a rotatable piece of iron 5, the rotor, around which is wound a coil of wire. When current is supplied to the element 5, it becomes magnetized, so that at each end of this member there appears a North pole and a South pole. If direct current be supplied through the power lines, current will flow into the armature or stator coil so that the member 1, the armature or stator, will become magnetized and a North pole will appear at the lower end of the stator between the two halves of the stator coil and a South pole at the other end. We now encounter one of the laws of magnetism, i.e. that one magnetic pole will attract or repulse another magnetic pole; like poles will repulse each other while unlike poles will attract.

In the Engler device, after the current is turned on, the North pole of the stator (1) will repel the North pole of the rotor, and the South pole of the stator will repel the South pole of the rotor. This causes motion and the rotor will start around and will keep going until a North pole is opposite a South pole and a South pole opposite a North pole. When this occurs rotation stops. The rotor is at a standstill. The motor is locked. Something must be done to start the rotor again; to unlock the motor. Engler solved this situation by changing the poles in the rotor. He does this by use of the commutator 10. By this device he changes the direction in which the electricity is fed into the rotor. The electric current is reversed in the coils of the rotor. The poles in the rotor are thereby reversed. Now opposite the South pole in the stator there is a South pole in the rotor and opposite the North pole in the stator there is a North pole in the rotor. In accordance with the law of magnetism the repulsion between the like poles caus-

es the stator to go around. This process is continued and continued so that continuous motion of the rotor is accomplished.

I gather and I am convinced that the above is what plaintiff means and refers to in claim 8, element 5 "of reversing polarity" and element nine "means for reversing the polarity in a synchronous cycle".

The defendant of course is confronted by the same law of magnetism. Defendant's device is different in many respects. It is one machine, not a series of machines mounted on a common shaft. I do not regard this, however, as particularly important in passing on this question.

The polarity of its rotor is not reversible but is fixed. It does not change.

The current supplied originally to the Logan Motor is alternating current. The current first flows through a device known as a thyratron. Through these thyratrons current can only flow in one direction; they convert the alternating current into direct current. The stator windings of the Logan Motor are energized by the current flowing through these thyratrons. These stator windings are not continuously energized. Current through the thyratrons is supplied for an instant to one stator winding, then again for an instant to another stator winding from a different set of thyratrons and then current goes into a third stator winding from the third set of thyratrons. While this is going on, at the same time current flows through the rotor windings to coils in the armature and through return thyratrons.

This current causes the rotor to become magnetized so that it then has a North and a South pole. The coils of the stator are not all energized at the same time but one after the other. These spurts of direct current to the stator coils results in magnetic poles which spin around the stator, pulling after it the rotor. This spinning magnetic flux in the stator affects the poles in the rotor. For instance, as the spinning North pole in the stator spins around, it causes the fixed South pole of the rotor to follow it and to revolve with it. That is the way motion is obtained in the Logan Motor. By means of the thyratrons, the current is sent through the stator winding in only one direction and the current in the rotor winding is always in the same direction. The magnetic polarity of the rotor does not reverse but always remains the same.

I have come to the conclusion that the Logan Motor does not infringe the Engler invention. We have seen that each device has many things in common but these elements are common to practically all motors. The distinguishing element in the Engler motor as evidenced by claim 8 is a reversal of the polarity of the rotor field magnet; the rotor polarity is reversed every half revolution. There is no such thing in the Logan Motor.

The Logan Motor operates with no reversal of current either in the winding of the armature (stator) or in the winding of the rotating member, the rotor. The Engler motor operates because he reverses the current in the field winding in the rotor. I regard this as absolutely essential to the Engler motor. It is not in the Logan Motor. I therefore find no direct infringement. Neither do I find the infringement in the Logan Motor on the basis of equivalents. Both solved the problem of getting by the law of magnetism—that like poles will repulse and unlike poles will attract each other. Each has solved it in, his own way. The fact that Engler has solved it does not necessarily mean that one who later solves it infringes. Long before Engler patented his idea others had worked out a solution. Several in fact by reversing the polarity of the field magnet.

Both the Engler device and the Logan Motor have accomplished the same thing; reached the same result, i. e. rotation, which eventually produces electrical force or working power. To that extent they accomplish the same thing but that is not infringement. They do it by an entirely different method.

The plaintiff argues that cutting out an armature coil in the Logan Motor and cutting it in again a half a revolution later is equivalent to Engler reversal. I have puzzled over this a great deal. I cannot see it. There is no reversal in the Logan Motor. The similarity, I find in the result accomplished, is rotation. Of course this does not spell out infringement.

In his argument on this point plaintiff's attorney assumes a machine which is really not the Engler device. He assumes a machine in which half of the time the field is energized without reversal. He puts a rather strained construction upon the Engler claim in this respect. Engler's claims state that the unlocking is by reversing the polarity of the rotor field magnet and means for reversing the polarity.

I think he should be held to a strict interpretation of his claims in this respect. He is working in a crowded field.

Plaintiff's claims in his patent regarding elements 5 and 9 are very definitely and expressly stated. I see no reason by virtue of the doctrine of equivalents to extend his claims to include another different method.

■ Furthermore, the device contemplated by the Engler patent has never been built or used commercially. I do not feel that he should be given a wide range of equivalents. Irvin & Co., Inc., v. Westinghouse Air Brake Co. et al., 2 Cir., 121 F.2d 429.

I do not think it is necessary for me to go into great detail on the question of the homopolarity of the Logan Motor. Assuming that both devices are homopolar machines, my decision would still be the same.

The next element of the Engler patent we have to consider is element 10 "means for rendering ineffective the electromotive force induced by said reversals".

In view of my previous holding regarding the other two elements it seems to me to follow as a natural sequence that I should find the same way regarding this element 10. Indeed the attorney for the plaintiff in summation before me stated in substance that if I found for the plaintiff on element 5, element 9 would follow and also element 10. I agree with him. I also think the contrary is true. If I find against the plaintiff on elements 5 and 9, I must find against him on element 10.

The Logan Motor has no "reversals". It naturally follows that it has no electromotive force induced by "said reversals".

Plaintiff claims that he need have no electromotive force caused by such reversals and that this electromotive force is not actually caused by such reversals. I think the plaintiff must be held to a fairly strict interpretation of his claims set forth in the patent. Much that I have heretofore written applies to this proposition. It will be unnecessary for me to repeat it here on this point.

Plaintiff's contention is that he renders ineffective the electromotive force induced by said reversals by the relay 14. This he calls a trigger circuit. Plaintiff claims that there is an equivalent to this in the Logan Motor, to wit, the trigger circuit in the Logan Motor as shown in Figure 1, Exhibit 4, the Alexanderson reissue patent, as the contact maker 40 together with the valves 15, 16, 17 and 18. He claims that by the contact maker the valves are caused to operate the same as the relays. I simply cannot see this contention. I find no such means in the Logan Motor for rendering ineffective the electromotive force induced by "said reversals".

It would be idle for me and of no value to anyone to enter into a detailed discussion of these two separate devices. The so-called trigger circuit of Engler is entirely different from the thyratrons and control circuits of the Logan Motor in purpose, mode of operation and result. There is no identity in function, mode or result of the trigger circuit in the respective combinations.

To sum up the issues here, I find that the elements in dispute in each machine do or help accomplish the same thing; they reach the same result. That is rotation which produces electrical power and labor force. But they do not do it in substantially the same way. I, therefore, find against the plaintiff. The Logan Motor does not infringe claims 1 through 8 of the Engler patent.

In view of my holding on the question of infringement, I do not find it necessary to decide the validity of plaintiff's patent.

Judgment for the defendant. The complaint is dismissed.