### BUCHANAN et al. v. WYETH HARDWARE & MANUFACTURING CO.

No. 8935.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1931.

Rehearing Denied April 3, 1931.

Enos E. Hook and H. W. Hart, both of Wichita, Kan. (Glenn Porter, of Wichita, Kan., on the brief), for appellants.

Otis A. Earl, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., and Groves & Watkins, of St. Joseph, Mo., on the brief), for appellee.

Before KENYON and GARDNER, Circuit Judges, and MUNGER, District Judge.

KENYON, Circuit Judge.

This suit, in which appellants were plaintiffs, is for an alleged infringement of patent No. 1,670,235, granted to Isaac W. P. Buchanan May 15, 1928, for a hand-operated liquid variable spray device. The G-V Sprayer Company is Buchanan's licensee. Appellee (defendant) is a hardware company at St. Joseph, Mo. The defenses are the usual ones of invalidity and noninfringement. The trial court held that the Buchanan patent was invalid for want of invention; that it was clearly anticipated by the D. B. Smith patent of August 15, 1911, No. 1,000,447; that Buchanan made only one improvement on the Smith sprayer, and that was the addition of a locknut to secure the sprayer nozzle to any particular adjustment; and that such improvement did not constitute invention; and it is pointed out that the Patent Office had so ruled in connection with this very patent.

The Buchanan patent came into a crowded field. Defendant in its answer cites twenty-two domestic patents and five foreign patents, covering, it claimed, the same thing patented in the Buchanan patent, and defendant alleged that Buchanan was not the first in-

ventor or discoverer of any material or substantial part of the things patented in said letters patent, No. 1,670,235; that the Buchanan patent was merely an "aggregation of old and well-known mechanical expedients arranged for use in an obvious and customary manner and devoid of invention."

The Buchanan patent relates to a spraying device whereby liquid under pressure is discharged in a solid stream or in varying sprays from a nozzle, the nature of the spray being varied by the adjusted position of the nozzle tip. There is a liquid tube leading from the container centrally arranged with relation to the eduction tube so as to provide an annular air passage open around the liquid tube. The air pressure is supplied by an air pump communicating with the container, which also serves as a handle for directing the discharge toward the object to be treated. The nozzle is threaded upon the eduction tube so that it can completely engage the end of the liquid tube, thus cutting off the escape of air from the air tube and making it possible to discharge a solid stream. It is turned in varying relation with the liquid tube to change the character of the spray. When the kind of spray desired has been determined by turning the nozzle tip, it can be stabilized by the locknut so that the position of the tip is indefinitely maintained. To give an idea of the structure, we set out the drawings forming part of the specifications of the patent.

shown, but they are the usual bicycle or auto pump device.

Figure 2 is a section on line 2-2 of figure 1.

Figure 3 is an enlarged sectional view through the nozzle part of the device.

Figure 4 is an elevation with parts in section showing modification of nozzle part, and it may be noted there are indentations in the eduction tube to hold the liquid tube in fixed space relation.

Figure 5 is an elevation with parts in section of another modification.

Plaintiff diagrams the two claims of the patent at issue as follows:

"Claim 1, a continuous variable hand operated spraying device comprising:

(1) a container (1),
(2) a hollow head (9) thereon and communicating therewith.
(3) a hand operated air compressing pump (23)
   (a) rigidly secured to the head (9) for introducing compressed air into said head and container (1) and
   (b) for manipulating the operating device when in use,
(4) an eduction tube (30)
   (a) having one end connected to and in communication with the hollow head (9),

Figure 1 shows the induction tube and the liquid tube which is open at both ends and that the part of it within the eduction tube is centrally arranged so as to provide an annular air passage. The pump and handle are not

(5) a liquid tube (31)
   (a) open at both ends extending through the eduction tube (30)
   (b) with its outer end protruding from the eduction tube (30)

(c) and having its inner end portion extending into the container (1),

(d) the delivery end portion of the liquid tube (31) being circumferentially spaced from the delivery end portion of the eduction tube (30) to form an annular unobstructed air outlet passage,

(6) means for immovably fixing the liquid tube (31) relative to the eduction tube (30)

   (a) thereby holding its protruding end in fixed relation to the outer end of the eduction tube (30),

(7) an atomizing tip (40)

   (a) adjustably mounted on the outer end of the eduction tube (30)

   (b) so that it can be moved into sealing engagement with the outer end of the liquid tube (31) or held in spaced relation thereto, thereby wholly or partially preventing compressed air from the eduction tube (30) from contacting the emerging liquid,

   (c) and the aperture in the tip (40) being smaller than the outlet from the liquid tube (31), thereby causing, with the adjustment of said tip, a varying back pressure on the merging liquid, and

(8) means (4)

   (a) for stabilizing the atomizing tip (4) in its successive positions on the eduction tube (30) and preventing the escape of air and liquid except through said aperture.

"Claim 2 is the same, except subdivision 6, which is as follows:

(6) Said threaded end of the eduction tube (30) comprising adjustable means for immovably clamping the liquid tube (3) against a portion of the head (9) and

   (a) thereby holding its protruding end in fixed relation to the outer end of the eduction tube (30)."

The claims as thus diagramed show eight definite elements which appellants insist co-operate and bring about a structure successfully used in a commercial way for spraying.

Appellants claim the novelty in the patent is really composed of the combination of four elements, as follows:

"1. A liquid tube passing through an eduction tube and rigidly fixed as to longitudinal movement with reference to that eduction tube.

"2. An adjustable top mounted on the eduction tube.

"3. Stabilizing means which fixes the movable tip in its several positions upon the eduction tube, but which several positions vary from sealed contact to spaced relationship.

"4. A handle connected with the apparatus to give proper directional manipulation," and that each of the elements is essential to all the others.

No claim is made that any of the elements are new, but it is asserted that Buchanan had the right to draw from the whole field in making his combination, and that in his patent he produced by an ingenious combination of old elements a new and improved result different and more efficient than any sprayer on the market at the time his patent made its advent, that no other sprayer introduced as part of the prior art had a fixed liquid tube, a stabilizing device, and the other elements in his combination, and that after the issuance of the patent the large manufacturers of sprayers copied and appropriated the main elements thereof.

Appellants are entitled to the benefit of the presumptions available by virtue of the issuance of patents, viz. validity, utility, and invention. Acme Foundry & Machine Co. v. Oil Well Improvements Co. (C. C. A.) 2 F.(2d) 530; Zip Mfg. Co. v. Pusch (C. C. A.) 2 F.(2d) 828; Detroit Motor Appliance Co. v. Burke et al. (D. C.) 4 F.(2d) 118; Tropic-Aire, Inc. v. Sears, Roebuck & Co. (C. C. A.) 44 F.(2d) 580; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527. They insist that the commercial success and general use of the patented article are evidence that the device involves invention. Commercial success is to be considered of course on the question of invention where the same is in doubt, but courts, in view of the many elements entering into commercial success, view with some caution such evidence as establishing patentable novelty. In McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 79, 35 L. Ed. 800, the Supreme Court said, as to the claim that a patented article having gone into general use was evidence of utility: "It is not conclusive even of that, much less of its patentable novelty."

The burden of proof rests upon defendant to overcome the presumption of validity arising from issuance of the patent. Zip

Mfg. Co. v. Pusch (C. C. A.) 2 F.(2d) 828; Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79.

That a combination of old elements may be patentable is settled by the authorities. The rule is stated by this court in National Hollow Brake-Beam Co. et al. v. Interchangeable Brake-Beam Co., 106 F. 693, 706, 707, as follows: "A new combination of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter." The tests to be applied are set forth by this court in Detroit Motor Appliance Co. v. Burke et al., 4 F.(2d) 118, 121, as follows: "Has the efficiency of an old process been increased, or has a new and useful result been reached, or has an old result been produced in a better, cheaper, or more effective way? If so, the combination may be patentable."

That the elements of the patents are old is of course not conclusive against patentable novelty, nor does it preclude possibility of invention. Detroit Motor Appliance Co. v. Burke et al. (D. C.) 4 F.(2d) 118.

That the new combination accomplishes a better result does not alone evidence invention. "The union of the selected elements may be an improvement upon anything the art contains, but, if, in combining them, no novel idea is developed, there is no patentable invention, however great the improvement may be." Turner v. Lauter Piano Co. et al. (C. C. A.) 248 F. 930, 938; Thomson Spot Welder Co. v. Ford Motor Co. (C. C. A.) 281 F. 680; Western Willite Co. et al. v. Trinidad Asphalt Mfg. Co. et al. (C. C. A.) 16 F.(2d) 446.

We test this case by these well-established rules to determine whether there is any invention shown in the Buchanan combination. The prior art is important as affecting not only the question of validity, but also infringement, and much light is thrown thereon by the file wrapper history of the patent in suit, which shows that it had a difficult trip through the Patent Office. The original application was filed February 11, 1925, so the matter was in the Patent Office for more than three years. It is argued that the vigorous prosecution of the patent application through the years strengthens the presumption of validity, as it shows careful consideration by the Patent Office. Ordinarily the presumption would be strengthened by evidence of careful consideration. The fact that the Patent Office in its consideration and investigation did not discover the Smith patent upon which the trial court largely relied in its decision somewhat weakens the argument, and likewise the presumption of validity.

The original twenty-nine specifications and claims, which were very broad and based on the theory that Buchanan was the originator of this kind of sprayer, were canceled on citations. As to the similarity of the claims with some of those now urged, it is interesting to note No. 6 thereof, as follows: "In a spray projecting device and in combination, a liquid tank, an eduction tube communicating therewith, means for charging the tank with air under pressure, a liquid tube leading from the tank and through said tube, a nozzle threaded on the tube, a lock nut threaded on the tube back of the nozzle, and a washer interposed between the nozzle and nut."

Claim 16 included the adjustable tip with the locknut and washer. The Patent Office, requiring the selection of species, cited certain references to patents. A number of the claims were canceled and reconsideration asked, and it was stated that the specific claims were "limited to the means for varying the spray through means of adjusting the nozzle on the eduction tube or adjusting the fluid tube in relation to the nozzle, and the locking means for holding the parts in adjusted position." In the rejection it was stated: "The employment of a lock nut and washer is not a matter of invention and further does not in any way co-act with the remainder of the structure set forth. Such lock nuts and washers are commonly used as shown for example by Gardner or Anthony." After this rejection, certain features of patentee's drawing were canceled by him. New claims were submitted, which seem to be substantially the ones now asserted as the novel features of the Buchanan patent.

All of these claims were in July, 1927, rejected, some of them as reading on Hasbrouck, others on MacDonald, and for the further reason that they were drawn to a combination shown to be old in MacDonald, Hasbrouck, Ranson, or Voelkner.

In September, 1927, Buchanan filed an amendment, responsive to the action of the Patent Office, in which the central arrangement of the liquid tube by means of the indentations is presented, which paragraph was subsequently canceled.

A new set of claims was presented covering the liquid tube mounted in fixed relation,

the adjustable nozzle tip, and the stabilizing means. The importance of the locknut and washer was emphasized. In the supporting remarks the annular unobstructed air passage was stressed by the following statements: "It is absolutely necessary, to secure perfect results with a variable spray, to have a fixed liquid tube concentrically spaced in the eduction tube to provide an annular and unobstructed air passage, to have the nozzle or tip adjustable on the eduction tube so that it can be moved to a position to entirely prevent the escape of air from the annular passage so that a solid stream of liquid will pass from the tip."

Also: "It is also essential that the air passage is annularly arranged around the liquid tube so that the air can contact all portions of the liquid stream. If the air passage is obstructed, then portions of the stream of liquid are acted on with greater force by the air pressure than are other portions of the stream and this will result in large drops of liquid in the spray, due to the fact that portions of the stream are subjected to less pressure than other portions. By having an annular air passage, a spray of uniform quantity and texture is secured whether the spray be fine or coarse."

It is to be noted that in the remarks it is pointed out that the Hasbrouck patent has the end of its liquid tube closed except for small ports through which the air passes, which differentiates it from Buchanan's claimed device, that the Gurnee patent, 601,-564, does not "show an unobstructed annular air passage." The Patent Office on January 21, 1928, rejected all of these claims as reading on other patents, and cited a number of patents as having a similar nozzle and locknut. It said: "The French patent shows a similar nozzle employing a lock nut to lock the tip in adjusted position. The patent to Causey shows the identical form of lock nut and washer employed by applicant, and used in the same way for the same purpose."

In response to the Patent Office's action of January 21, 1928, patentee canceled certain specifications and substituted others, one substitute being: "As will be seen, the liquid tube is open at both ends with one end protruding from the liquid tube and that part of the liquid tube in the eduction tube is centrally arranged with relation to the eduction tube so as to provide an annular air passage, the liquid tube being supported in any suitable manner, such for instance by forming indentations in the eduction tube to engage the liquid tube, as shown in Figure 4, with the bent part of the liquid tube being held between the inner end of the eduction tube and a part of the wall of the hollow head. Thus the liquid tube is held in fixed relation to the eduction tube."

It is interesting to note that, in response to the amendments filed March 20, 1928, and in rejecting on March 31, 1928, all the claims as drawn, the Examiner said:

"Applicant is advised that it is thought that the relation of parts to clamp the liquid tube in the head is the only possibly patentable novelty in the case and that if this subject matter were claimed per se, such claims would probably be allowed. Accordingly, all the claims, as drawn, are rejected.

"Gurnee 769,741 is added to the record."

In response to this rejection, the amendment of March 20, 1928, was further amended by inserting the following: "Another object of the invention is to so position the liquid tube in relation to the eduction tube that the delivery end portion of the liquid tube is circumferentially spaced from the delivery end portion of the eduction tube to form an annular unobstructed air outlet passage. This passage serves two purposes, one being that the emerging liquid is contracted on all sides by the air under pressure, thus producing a uniformly textured spray and the other being that this annular passage is not as likely to be clogged as a more restricted passage, and if clogged, it is more easily cleaned."

A further amendment was this: "Attention is called to the fact that the annular air passage formed by spacing the delivery end portion of the liquid tube circumferentially from the delivery end portion of the eduction tube, causes the compressed air discharging from the eduction tube to contact the liquid emerging from the liquid tube with equal pressure on all the sides, thus producing a spray of uniform density and texture. This annular passage is not likely to be clogged as a more restricted passage would be, and if clogged, it is more easily cleaned."

In his response to the action of the Patent Office of March 31, 1928, rejecting all claims as drawn, patentee distinguished his claims from the French patent, Le Grand, by emphasizing the importance of the annular air discharge passage between the eduction tube and the liquid tube, causing the air to contact uniformly with the liquid, while in the French patent the air discharges were through two small openings. He points out that this would be detrimental in the spraying of both animals and vegetation. In referring to the

Walkup, Hasbrouck, and Gurnee patents, he claims the discharges were obstructed similarly as in the Le Grand patent, and reference is made to the difficulties of clogging and the necessity of cleaning because of the obstructed passages. The emphasis placed by patentee upon the importance of the "annular unobstructed air outlet passage" in securing his patent is obvious from these various citations. Buchanan, to secure the patent, after continued rejections of his numerous claims, stressed the idea of the liquid tube circumferentially spaced with the air tube to form an annular unobstructed air outlet passage. He does not now include this in his four novel features, but it is part of claims 1 and 2. See subdivision (d) of division 5 of the diagram of claims 1 and 2, supra.

These proceedings in the Patent Office show, as clearly as can appear through the mass of claims, rejections, amendments, and findings, that the unobstructed annular air passage was the really essential and deciding element of novelty in the combination. Practically all the other claims of novelty were repeatedly rejected by the Patent Office. All of the elements, however, including the unobstructed annular air passage, were deemed necessary by Buchanan to produce his device. He can claim infringement only by a device which includes all the elements or equivalents of his combination.

The device used by appellee does not have an annular unobstructed air outlet passage for the eduction tube. As making clear the difference in the Buchanan and appellee (defendant) structures, we insert an illustrative cut:

strict terms of all his claims, and cannot discard part of them to meet the situation. In R. H. Buhrke Co. v. Brauer Bros. Mfg. Co., 33 F.(2d) 838, 839, this court said: "This rule is clearly expressed in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, quoting from page 443, 47 S. Ct. 136, 141, 71 L. Ed. 335, where the court said: 'It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent.' " In Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 603, 65 L. Ed. 1162, it is said: "Having thus narrowed his claim against rotary movement in order to obtain a patent the patentee may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments." Smith v. Springdale Amusement Park, Ltd., et al. (D. C.) 39 F.(2d) 92; Commercial Lithographing Co. v. Clean-A-Press Mach. Co. (C. C. A.) 39 F. (2d) 322; Quick Action Ignition Co. et al. v. Maytag Co. (C. C. A.) 39 F.(2d) 595; Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 5 S. Ct. 1021, 29 L. Ed. 67; Roemer v. Peddie, 132 U. S. 313, 10 S. Ct. 98, 33 L. Ed. 382; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 S. Ct. 28, 37 L. Ed. 989; Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059.

The range of equivalents here in view of the proceedings in the Patent Office must be

Fig. 1 - Patent in Suit.
eduction Tube
liquid Tube
annular unobstructed air outlet passage.

Fig. 2 - Defendant's Structure
eduction Tube.
liquid Tube.
four air discharge orifices.
four obstructions.

Appellee's structure has a number of outlet ports, which are common in the prior art, and which Buchanan distinguished in his claims and specifications. Hasbrouck, to which he referred, has four discharge orifices, as has appellee. Walkup, Gurnee, and Le Grand each have two.

Patentee accepted the patent with the limitations arising from the proceedings in the Patent Office, and must be held to the

narrow. Roemer v. Peddie, 132 U. S. 313, 10 S. Ct. 98, 33 L. Ed. 382; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

As the device used by the appellee is not so arranged as to have an annular unobstructed air outlet passage for the eduction tube, but instead has a number of air outlet ports, it does not constitute infringement of the Buchanan patent.

■ On the question of invention, the Patent Office history is important, as throwing light on the prior art. The inventor is presumed to know of all prior patents, and such patents, containing elements of the process, are to be considered in determining the question of invention. Zimmerman et al. v. Advance Machinery Co. (C. C. A.) 232 F. 866; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856.

While there were many patented sprayers prior to Buchanan's, appellants contend there was no device or patent in the prior art showing all the essential elements or their equivalents of the Buchanan patent, and that hence there is no anticipation thereof. This seems to be the law. Walker on Patents (5th Ed.) p. 67, says: "Therefore in order to negative novelty or as it is usually expressed, to 'anticipate' an invention, it is necessary that all of the elements of the invention or their equivalents be found in one single description or structure where they do substantially the same work in substantially the same way." This court, in J. L. Owens Co. v. Twin City Separator Co., 168 F. 259, 265, stated the rule as follows: "It is no defense to a claim of an infringement that one or more elements of a patented combination, or one or more parts of a patented improvement, may be found in one old patent or publication, and others in another, and still others in a third. It is indispensable that all of them, or their mechanical equivalents, be found in the same description or machine, where they do the same work by substantially the same means." Stead Lens Co. v. Kryptok Co. (C. C. A.) 214 F. 368; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co. (C. C. A.) 215 F. 362; Acme Foundry & Machine Co. v. Oil Well Improvements Co. (C. C. A.) 2 F.(2d) 530. From the prior art it might appear there was no invention, even though all the elements of the device on their equivalents were not found in a single prior structure. Judge Hook pointed out in Turner v. Moore et al., (C. C. A.) 211 F. 466, that, if all the elements of a patent have been before disclosed, it may not be invention merely to bring them together in some certain way. Zimmerman et al. v. Advance Machinery Co. (C. C. A.) 232 F. 866; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856.

Many patent structures were introduced in evidence to show the state of the prior art and that all the elements of Buchanan's patent were old in the art. Appellants claim that none of the previous sprayers had the exact stabilizing means of the Buchanan patent.

This stabilizing means is the locknut to hold the adjusted position of the nozzle. Buchanan does not claim, nor does his counsel, that the mere use of a locknut is invention. Just what is claimed with relation thereto is clear from Buchanan's testimony, from which we quote:

"I am not claiming as my invention the addition of a lock nut to a continuous spray. We are claiming the combination of four elements that produce a result that has never been produced before and that there is no structure today or that has ever been on the market, that combines those four elements. Those four elements are these: A liquid tube passing through the eduction tube and rigidly fixed with reference to that eduction tube. By 'rigidly fixed' I mean longitudinally. Second is an adjustable tip mounted on that eduction tube. Third, stabilizing means which fixes that movable tip in positions that vary from sealed contact to spaced relationship. Fourth, a handle connected with this apparatus to give the proper direction in its manipulation. It is the combination of four old elements making a better result than has ever been obtained that we claim as our patent, not the patenting of a lock nut. * * *

"There is no sprayer that has the combination with a locknut that ours has and that is what we claim for the combination. It is not so that this case hinges on the question of whether the addition of the locknut to one of these sprayers involved invention. It is a peculiar combination of four elements as outlined in our claim."

The combination, however, is completed by the use of the locknut. Buchanan stated that its use was a common ordinary expedient, whether in combination with packing or otherwise. The locknut feature as a stabilizing means for nozzles is old in the art, and the Patent Office has stated, in rejecting some of Buchanan's claims, that the addition of a locknut would not give patentable novelty to the claims. It is found as a stabilizing means in Hasbrouck patent, No. 719,586 and No. 719,587, where it appears that Hasbrouck attempted to accomplish exactly what Buchanan did as to the variable spray by means of adjusting the tip by means of a locknut. In one of the Hasbrouck statements is this, "The end of the outer tube b is externally threaded to receive a tip d and a check or lock nut d'." The Causey patent, No. 874,488, also has the locknut, and there are others using the locknut or set screw to secure the nozzle in adjusted position. Buchanan bases his claim on the use of the locknut or other stabilizing

means in combination with the other elements of his patent.

The trial court gave considerable weight to the D. B. Smith Sprayer (patent No. 1,-000,447, issued August 15, 1911), holding it anticipated the Buchanan patent. The Smith patent covers the details of claim 1 of the patent in suit, with the exception of the locknut used as a stabilizing means for holding the atomizing tip of the nozzle in its adjusted position, and also contains the elements of claim 2 of the patent, except the stabilizing means specified in subdivision 6. It shows a concentrically supported liquid tube, a nozzle opening out of the air chamber "surrounding the end of the liquid tube with sufficient passage for air on all sides, substantially as set forth." This seems fairly the equivalent of the annular space surrounding the liquid tube of the Buchanan patent, which is the special merit advanced by Buchanan in securing his patent. The Smith structure does not show the securing of the liquid tube by the threaded end of the eduction tube, but supporting pins hold it in place to provide the annular air passage. Threaded support for the liquid tube is common in the prior art. The Hudson sprayer shows the liquid tube held or clamped against longitudinal movement by means of the eduction tube threaded into the head. Others in the art show the same.

The prior commercial art shows that Smith had upon the market much earlier than the time of the Buchanan patent a continuous variable sprayer. In the 1910 D. B. Smith & Co. catalog it is spoken of as follows: "The 'U. T. K.' compressed air sprayer throws a continuous fine mist or coarse spray which is accomplished by turning the little brass nozzle backward or forward"; in the 1911 catalog as follows: "The 'U. T. K.' Compressed Air Sprayer throws a continuous fine mist or coarse spray which is not affected by the movements of the plunger. The size of spray is accomplished by turning the little brass nozzle backward or forward"; and so run the various references through the different Smith catalogs, showing that the nozzle tip was being employed and that the spray was regulated by turning the same backward or forward. These sprayers were sold all over the United States.

Buchanan was asked as to which of his four elements other than the locknut were not present in the Smith sprayer. He testified:

"In Smith's sprayer I find a stabilizing device absent and an annular relationship with reference to the eduction tube, which permits of leakage of the liquid. Otherwise I think it is all right.

"I said before that one of these Smith sprayers seems to be fixed in annular relationship more than the other but there was no means of fixing it and it would be an accident. Many of the tubes would be against the side of the eduction tube, as in our Exhibit 5, and we would have to put in indentations or put in a conical shaped tip to bring it in position."

The Smith structure seems a complete anticipation of the Buchanan patent, outside of the locknut or stabilizing means there employed.

There is really no serious controversy over the proposition that every element in the Buchanan patent or its equivalent is common in the prior art. Reference to the Smith, Hudson, Gurnee, Causey, and Hasbrouck patents supplies abundant evidence thereof.

This whole discussion brings us to the real point, i. e., is the use of the locknut by Buchanan as a stabilizing means on the sprayer, in combination with the various elements of the patent, all old in the prior art, invention; is it mere mechanical skill, or is the Buchanan structure merely an aggregation of elements old in the art?

The line between invention and mechanical skill is a close one, and difficult at times to discern. In Florsheim v. Schilling, 137 U. S. 64 (Syllabus), 11 S. Ct. 20, 34 L. Ed. 574 the Supreme Court held: "A new arrangement or grouping of parts or elements of a patented article, which is the mere result of mechanical judgment, and the natural outgrowth of mechanical skill, is not invention." In McClain v. Ortmayer, 141 U. S. 419, 426, 427, 12 S. Ct. 76, 78, 35 L. Ed. 800, the Court said: "What shall be construed as invention within the meaning of the patent laws has been made the subject of a great amount of discussion in the authorities, and a large number of cases, particularly in the more recent volumes of reports, turn solely upon the question of novelty. By some, 'invention' is described as the contriving or constructing of that which had not before existed; and by another, giving a construction to the patent law, as 'the finding out, contriving, devising, or creating something new and useful, which did not exist before, by an operation of the intellect.' To say that the act of invention is the production of something new and useful does not solve the difficulty of giving an accurate definition, since the question of what is new, as distinguished from that which is a colorable varia-

tion of what is old, is usually the very question in issue. To say that it involves an operation of the intellect, is a product of intuition, or of something akin to genius, as distinguished from mere mechanical skill, draws one somewhat nearer to an appreciation of the true distinction, but it does not adequately express the idea. * * * Courts, adopting fixed principles as a guide, have by a process of exclusion determined that certain variations in old devices do or do not involve invention; but whether the variation relied upon in a particular case is anything more than ordinary mechanical skill is a question which cannot be answered by applying the test of any general definition." Lack of invention in patents and the differentiation of invention and mechanical skill is discussed in many cases. We cite a few. Dilg et al. v. George Borgfeldt & Co. (C. C. A.) 189 F. 588; Turner v. Moore et al. (C. C. A.) 211 F. 466; Jorgenson v. Hawkins (C. C. A.) 14 F.(2d) 409; Western Willite Co. et al. v. Trinidad Asphalt Mfg. Co. et al. (C. C. A.) 16 F.(2d) 446; Ford Motor Co. v. Parks & Bohne, Inc., (C. C. A.) 21 F.(2d) 943; Smith v. Springdale Amusement Park, Ltd. et al. (D. C.) 39 F.(2d) 92; Quick Action Ignition Co. et al. v. Maytag Co. (C. C. A.) 39 F.(2d) 595; Wirebounds Patents Co. et al. v. H. R. Gibbons Box Co. (C. C. A.) 25 F.(2d) 363; Florsheim v. Schilling, 137 U. S. 64, 11 S. Ct. 20, 34 L. Ed. 574; C. & A. Potts v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275; Palmer v. Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445; McCarty v. Lehigh Valley Railroad Co., 160 U. S. 110, 16 S. Ct. 240, 40 L. Ed. 358; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196.

In Ford Motor Co. v. Parks & Bohne, Inc., 21 F.(2d) 943, 950, this court said: "We think, that with the devices in the prior art heretofore referred to before him, a competent mechanic, upon the mere suggestion of the purpose which it was desirable to effect, would have readily applied the old devices to the Ford automobile brake band." That language seems to fit the situation here. If the Buchanan structure had no locknut to hold the spray as adjusted by the nozzle, it would have been so similar to the Smith sprayer that there could have been no possible claim of such novelty in it as to amount to invention. It would seem that any one with any mechanical skill would know that by the use of a locknut the nozzle tip would be held in its adjusted place. It seems that no one did discover this exact use for the locknut in combination with other elements up to Buchanan's time, but some one had to think of it first, even if it constituted merely mechanical skill. The fact that Buchanan was the first so to think bears on the question of invention, but is not at all decisive. Zimmerman et al. v. Advance Machinery Co. (C. C. A.) 232 F. 866. We are unable to escape the conclusion that Buchanan's combination of elements did not, in view of the prior art, show any particular inventive genius. No new function was evolved, and the mere use of the locknut as a stabilizing means, which was old in the art, would not give invention to this combination. It evidences merely the exercise of mechanical judgment. We realize that appellee was called upon to meet the presumption of validity arising from the issuance of the patent. We think it has done so.

In our judgment the decision of the trial court that the patent is invalid was correct. We are further satisfied that, were the patent valid, there is no infringement in the device used by appellee.

The decree is affirmed.